UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MAURICE NEWSOME,

    Plaintiff,

v.                                                                        Case No. 09-10346

JOHN T. STEEL, PATRICIA                           HONORABLE AVERN COHN
CARUSO, ROBIN GILBERT, CORRECTIONAL
MEDICAL SERVICES, DENNIS STRAUB, JAMES
ARMSTRONG, MARY A, WILSON, BETH GARDON,
GARY SALISBURY, MICHELLE SLICK, and
HARESH PANDYA,

    Defendants.

_____/

**MEMORANDUM AND ORDER**
**ADOPTING THE REPORT AND RECOMMENDATION (Doc. No. 97) IN PART**
**AND**
**GRANTING DEFENDANTS' CARUSO, STRAUB, ARMSTRONG, GILBERT,**
**GARDON, SLICK and WILSON'S MOTION FOR DISMISSAL AND/OR FOR**
**SUMMARY JUDGMENT**
**(Doc. No. 38)**
**AND**
**GRANTING DEFENDANT CORRECTIONAL MEDICAL SERVICES' MOTION TO**
**DISMISS (Doc. No. 22)**

I.

This is a prisoner civil rights case under 42 U.S.C. § 1983. In general terms, plaintiff, proceeding pro se, claims that defendants were deliberately indifferent to his serious medical need for interfering with his medical care. Plaintiff's medical complaints stem from an alleged improper denial of medications following a liver transplant. The matter was referred to a magistrate judge for all pre-trial proceedings. Certain

defendants filed motions for summary judgment.[1]  Specifically, on April 20, 2009, Defendants Caruso, Straub, Armstrong, Gilbert, Gardon, Slick and Wilson ("the MDOC defendants") filed a Motion for Dismissal And/or for Summary Judgment (Doc. No. 38). On March 20, 2009, defendant Correctional Medical Services ("CMS") filed a motion to dismiss (Doc. No. 22).  On January 14, 2010, the magistrate judge issued a report and recommendation ("MJRR"), recommending that CMS's motion be granted, that the MDOC defendants' motion be granted as to all defendants except Gardon.

Before the Court are Gardon's[2] objections to the MJRR (Doc. No. 98) and plaintiff's objections to the MJRR with attached exhibits (Doc. Nos. 109, 110).[3]  As will be explained, one of Gardon's objections has merit; plaintiff's do not.  Accordingly, the MJRR will be adopted in part and defendants' motions will be granted.

II.

A district court must conduct a de novo review of the parts of a magistrate judge's report and recommendation to which a party objects.  28 U.S.C. § 636(b)(1). The district "court may accept, reject, or modify, in whole or in part, the findings or

---

[1]Defendants Salisbury and Pandya were later served and have filed separate dispositive motions which are pending before the magistrate judge.  Defendant Steel has not yet been served.

[2]Gardon is a registered nurse at the MDOC and the Health Unit Manager (HUM) at JCF, the facility where plaintiff is incarcerated.

[3]CMS filed a response to plaintiff's objections (Doc. No. 111).  In its response, CMS says that (1) plaintiff's objections are untimely and (2) lack merit.  As to timeliness, CMS points out that plaintiff was twice given an extension of time in which to file objections, the latest being until April 23, 2010.  Plaintiff did not file his objections until April 27, 2010 and his exhibits were not filed until May 3, 2010.  However, plaintiff signed and dated his objections on April 20, 2010.  Under the prison mailbox rule, the objections are deemed timely.

2

recommendations made by the magistrate" judge. Id.

A general objection, or one that merely restates the arguments previously presented, is not sufficient to alert the court to alleged errors on the part of the magistrate judge. An "objection" that does nothing more than state a disagreement with a magistrate judge's suggested resolution, or simply summarizes what has been presented before, is not an objection as that term is used in this context. Howard v. Sec'y of Health and Human Servs., 932 F.2d 505, 508 (6th Cir. 1991).

III.

Plaintiff makes several objections to the MJRR and has attached numerous exhibits in support of his objections. As best as can be gleaned, plaintiff's objections simply state his disagreement with the magistrate judge and offer no additional argument or evidence which was not before the magistrate judge. As the magistrate judge carefully explained, plaintiff has either not exhausted the claims against defendants or failed to make out a claim against them, primarily due to a lack of showing of personal involvement of the MDOC defendants and a failure to properly allege a pattern or practice claim against CMS. Accordingly, plaintiff's objections are overruled.

IV.

With respect to Gardon, she first objects to the magistrate judge's conclusion that plaintiff exhausted his claim against her for interfering with his medication. The Court agrees with the magistrate judge that this claim, which includes the more specific allegation in his complaint that Gardon intentionally falsified his medical record, was exhausted as required under the PLRA. Thus, this objection is overruled.

3

Gardon next objects to the magistrate judge's conclusion that there is "sufficient material evidence establishing a question of fact as to whether Gardon was personally involved in allegedly interfering with the administration and receipt of plaintiff's medication." MJRR at p. 27.

Plaintiff claims that Gardon interfered with his medication regarding receiving the correct dosage. As to the latter, plaintiff claims Gardon intentionally falsified his medical record regarding the proper dosage and prevented Dr. Antonini from increasing the dosage.

The magistrate judge concluded there was a genuine issue of material fact as to this claim, stating:

> . . . his claim is that she [Gardon] intentionally interfered with the receipt of the correct dosage of medication. On the record, the Court cannot determine the amount of medication plaintiff was supposed to receive, whether he in fact received it, or the role of Gardon in this process. Gordon's [sic] assertions that she cannot prescribe medication simply does not address the claim made by plaintiff that she interfered with his receipt of the correct dosage of medication. Under these circumstance and on this record, the undersigned believes that there is sufficient material evidence establishing a question of fact as to whether Gardon was personally involved in allegedly interfering with the administration and receipt of plaintiff's medication.

MJRR at p. 26. In a footnote, the magistrate judge points out that while the grievance responses indicated that plaintiff received the dosage prescribed, "no such evidence was presented by defendant."

This conclusion is problematic. As Gardon points out, the magistrate judge does not identify the "sufficient material evidence" from which he concludes there is a genuine issue of material fact. Plaintiff's claim is based on the allegation that Gardon changed his prescription order from 2 milligrams of Prograf, an anti-rejection

4

medication, to 1 milligram and that she prevented the doctor, Dr. Antonini, from increasing the dosage. See Plaintiff's complaint, Doc. No. 1, at ¶ 33-35.

The record shows the following in regard to this claim. Plaintiff filed a grievance on June 1, 2006, (JCF 2006 06-0910-12F) alleging that Gardon interfered with his medical treatment by failing to ensure that he got the prescribed dosage of Prograf. He filed another grievance on December 1, 2007, alleging he had only been given half of his Prograf between April and October of 2007.

Plaintiff's "evidence" of Gardon's involvement is set forth in the Summary of Complaint section of his June 1, 2006 grievance where he states that "on 5-26-06 at the U of M Dr. Fontana and Nurse Sullivan discovered that [Gardon] had failed to follow the prescribed doctor's order for Prograf . .. Sullivan, expressed to [plaintiff] that '[Gardon] was personally contacted by telephone and instructed he was to be provided, by a doctor's prescribed order, (to be) taking twice the amount of medication that he is currently taking, and this contact with [Gardon] was made some time ago with a doctor's prescribed order." See Exhibit D to MDOC defendants' motion - plaintiff's grievance. This evidence is clearly hearsay inasmuch as plaintiff is relying on a conversation he had with U of M personnel who allegedly blamed Gardon for plaintiff not receiving the proper amount of medication.

As to the dosage of Prograf, the investigation into plaintiff's grievance claim shows that on September 14, 2005, there was a medication order for Prograf, 1 milligram, twice daily until December 31, 2005. From February 15, 2006 to August 31, 2006, 1 milligram was ordered. On May 30, 2006, a memo from U of M Health System states "He should be on Prograf 2 mg BID." With respect to Gardon's involvement, the

5

record shows she took a phone call on June 16, 2006 from "Call from Pat at U of M transplant center Prograf needs to be increased to 2 mg BID. Chart to Dr. Antonini today." After Gardon took the phone call, plaintiff's dosage was increased to 2 milligrams twice daily. See Exhibit F to MDOC defendants' motion, Attachment 1 - Progress Notes and Attachment 2. There is nothing in the record to create a genuine issue of material fact that Gardon interfered with plaintiff receiving the proper medication prior to June 16, 2006 when his Prograf dosage was increased. Although according to the grievance investigation, there was a May 30, 2006 memo indicating plaintiff was to have 2 milligrams of Prograf, there is no evidence showing that Gardon was aware of the proper dosage until she received the June 16, 2006 phone call. Plaintiff's hearsay evidence is not sufficient to create an issue of material fact.

Moreover, as pointed out in the MDOC's response to plaintiff's grievance, the medical practitioner, Dr. Antonini, not nursing staff, like Gardon "are required to review the recommendation of off site specialists." See Exhibit D to MDOC defendants' motion. Gardon confirms this in her affidavit. See Exhibit F to MDOC defendants' motion. As Gardon puts it in her objections:

> . . . nursing staff dispensed the physician and physician assistant's medication orders as written. HUM Gardon was not personally involved in determining the dosage of medications to be dispensed. To the extent that plaintiff had issue with the dosages, those issues were with the treating physician; and the HUM Gardon should not be subjected to liability based solely on the plaintiff's unsupported assertion that she somehow controlled his medication dosages. Plaintiff is required to come forward with affirmative evidence to support his allegations. He has not. . . .

Gardon's objections at p. 8 (footnote omitted).

V.

Accordingly, plaintiff's objections are OVERRULED; Gardon's objections are OVERRULED IN PART and SUSTAINED IN PART. The MJRR is ADOPTED IN PART as the findings and conclusions of the Court. Defendants' motions are GRANTED. This case is DISMISSED as to the following defendants: Caruso; Straub; Armstrong; Gilbert; Gardon; Slick; Wilson; and CMS. Defendants Salisbury, Pandya, and Steel remain. See n.1, supra.

SO ORDERED.

    S/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: June 10, 2010

I hereby certify that a copy of the foregoing document was mailed to Maurice Newson, 370171, G. Robert Cotton Correctional Facility, 3500 N. Elm Road, Jackson, MI 49201 and the attorneys of record on this date, June 10, 2010, by electronic and/or ordinary mail.

    S/Julie Owens
Case Manager, (313) 234-5160