UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| MAURICE NEWSON, | Case No. 09-10346 |
| Plaintiff, | Avern Cohn |
| vs. | United States District Judge |
| JOHN T. STEELE, *et al.*, | Michael Hluchaniuk |
| | United States Magistrate Judge |
| Defendants. | |

_______________________________/

**REPORT AND RECOMMENDATION**
**DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (Dkt. 81, 89)**

## I. PROCEDURAL HISTORY

This is a prisoner civil rights action filed on January 29, 2009. (Dkt. 1). Plaintiff alleges that defendants violated his constitutional rights pursuant to 42 U.S.C. § 1983. This case was referred to the undersigned by District Judge Avern Cohn on February 25, 2009. (Dkt. 6). Defendants Correctional Medical Services, Inc. (CMS), Straub, Armstrong, Slick, Gardon, Gilbert, Caruso, and Wilson (employees of the Michigan Department of Corrections) previously filed motions to dismiss or for summary judgment, which were granted. (Dkt. 97, 112). Later served defendants Dr. Haresh Pandya and Gary Salisbury filed dispositive motions as well. (Dkt. 81, 89). Plaintiff filed responses to these motions, as ordered by the Court. (Dkt. 94, 95). These matters are ready for report and recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that the defendants' motions for summary judgment be **GRANTED**. Defendants Salisbury and Pandya (along with unserved defendant Steele, *see* note 1, *infra*) are the last remaining defendants in this case. Given the foregoing recommendations that summary judgment should be granted in favor of defendants Salisbury and Pandya, and that defendant Steele[1] should be dismissed for lack of service, the undersigned suggests that plaintiff's complaint be **DISMISSED** in its entirety.

## II. STATEMENT OF FACTS

Plaintiff asserts several theories of recovery that essentially boil down to interference with prescribed medical treatment. Although he claims violations of his Fourteenth Amendment right to equal protection, his Eighth Amendment right to be free from cruel and unusual punishments, the Free Exercise Clause of the First Amendment, "the Bill of Rights," "Conversion," and "both the State and Federal Constitutions," the undersigned concludes that the complaint is limited to allegations of interference with plaintiff's medical care. Specifically, plaintiff seeks compensatory and punitive damages and an order requiring that his medical treatment be placed under the care of the University of Michigan Liver Transplant

---

[1] Plaintiff's complaint also names a Dr. John T. Steele as a defendant. This defendant has not been served or otherwise appeared in the case nor has plaintiff taken any action with respect to him. As such, to the extent plaintiff asserts any claims against Dr. Steele, the undersigned suggests that they should be dismissed. *See* E.D. Mich. LR 41.2.

Team. Plaintiff is a liver transplant patient and he claims that all of the named defendants interfered with his medical treatment and/or failed to intervene on his behalf on various occasions beginning in 2005. Based on his responses to the dispositive motions, plaintiff does not appear to dispute that his claims are based on alleged violations of his Eighth Amendment rights.

The undersigned issued a report and recommendation on January 14, 2010, which contained a detailed description of the factual background, plaintiff's grievances, and the applicable grievance procedure. (Dkt. 97). These facts need not be repeated here, but may be relied on as appropriate for the analysis below.

## III. ANALYSIS AND CONCLUSIONS

### A. Standards of Review

Summary judgment[2] is appropriate under Rule 56(b) "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476, 478-79 (6th Cir. 1995), the court stated the standard for deciding a motion for summary judgment:

---

[2] Defendant Salisbury moved for dismissal or for summary judgment, in the alternative. Given that the undersigned's review of defendant Salisbury's motion involves consideration of materials outside of the pleadings, the motion has been considered only as one for summary judgment. Fed.R.Civ.P. 12(d).

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

"In deciding a motion for summary judgment, [the] court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). A genuine issue of material fact exists only when, assuming the truth of the nonmoving party's evidence and construing all inferences from that evidence in the light most favorable to the nonmoving party, there is sufficient evidence for a trier of fact to find for the nonmoving party. *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

Rule 56 limits the materials the Court may consider in deciding a motion under the rule: "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995) (citation omitted). Moreover, affidavits must meet certain requirements:

> A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. If a paper or

> part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit. The court may permit an affidavit to be supplemented or opposed by depositions, answers to interrogatories, or additional affidavits.

Fed.R.Civ.P. 56(e)(1). In accordance with Rule 56(e), the Sixth Circuit has held "that documents submitted in support of a motion for summary judgment must satisfy the requirements of Rule 56(e); otherwise, they must be disregarded." *Moore v. Holbrook,* 2 F.3d 697, 699 (6th Cir. 1993). Thus, in resolving a Rule 56 motion, the Court should not consider unsworn or uncertified documents, *Id.*, unsworn statements, *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968-969 (6th Cir. 1991), inadmissible expert testimony, *North American Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1280 (6th Cir. 1997), or hearsay evidence, *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996); *Wiley v. United States*, 20 F.3d 222, 225-226 (6th Cir. 1994). *See Tolliver v. Federal Republic of Nigeria*, 265 F.Supp.2d 873, 879 (W.D. Mich. 2003). Thus, "[a] party opposing a motion for summary judgment cannot use hearsay or other inadmissible evidence to create a genuine issue of material fact." *Id.*, quoting, *Sperle v. Michigan Dept. of Corrections*, 297 F.3d 483, 495 (6th Cir. 2002) (citation and quotation marks omitted).

B. <u>Exhaustion of Administrative Remedies</u>

1. Legal standards

In *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910 (2007), the United States Supreme Court held that "exhaustion is an affirmative defense, and prisoners are not required to specifically plead or demonstrate exhaustion in their complaints." *Id*. at 923. The Court defined the level of detail necessary to exhaust as simply compliance with the administrative grievance process. *Id*. Moreover, the burden rests on the defendant to show that a plaintiff failed to exhaust when asserting exhaustion as an affirmative defense. *Id*. Accordingly, exhaustion is satisfied if plaintiff complied with the applicable MDOC grievance procedure and defendants bear the burden of showing otherwise. *Kramer v. Wilkinson*, 226 Fed.Appx. 461, 462 (6th Cir. 2007) (A prisoner-plaintiff "does not bear the burden of specially pleading and proving exhaustion; rather, this affirmative defense may serve as a basis for dismissal only if raised and proven by the defendants.").

A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden-the plaintiff on a claim for relief of the defendant on an affirmative defense-his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence

satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561.

2. Purpose of exhaustion requirement.

The Supreme Court defines proper exhaustion under 42 U.S.C. § 1997e(a) as "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 2385, quoting, *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id*. at 2386. The Supreme Court also observed that "[t]he PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Id*. at 2387, quoting, *Porter v. Nussle*, 534 U.S. 516, 525 (2002) (alteration omitted). Exhaustion serves a dual purpose: it gives prisoners "an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors." *Id*. at 2387-88. Additionally, the exhaustion requirement "has the potential to reduce the

number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record." *Jones*, 127 S.Ct. at 915-16.

Before *Jones* invalidated the additional exhaustion procedures placed on prisoner civil rights suits by the Sixth Circuit, a prisoner was required to "file a grievance against the person he ultimately seeks to sue," and exhaust the claim as to each defendant associated with the claim. *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001). The critical holding in Jones was that the PLRA does not impose additional exhaustion procedures or requirements outside the prison's grievance procedures. As observed in *Jones*, the primary purpose of a grievance is to alert prison officials of a particular problem. *Jones*, 127 S.Ct. at 923; *see also Bell v. Konteh*, 450 F.3d 651, 651 (6th Cir. 2006) ("[I]t is sufficient for a court to find that a prisoner's [grievance] gave prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint.").

3. Defendant Pandya

Plaintiff claims that he obtained a prescription for bottled water because he was getting sick from drinking the prison water. (Dkt. 1). Previously dismissed defendant Beth Gardon stated in her affidavit that an accommodation for bottled water was written by a medical provider on September 9, 2008. (Dkt. 38, Ex. F). Given that this request was outside the normal practice, she referred it to the

Regional Medical Office to determine medical necessity. According to Gardon, the determination to deny bottled water was made by Dr. Pandya. *Id*. In the January 14, 2010 Report and Recommendation, the undersigned noted that the record did not contain any grievance pertaining to the need for and denial of bottled water. (Dkt. 97). Thus, the undersigned concluded, as to defendant Gardon, that any grievance regarding the denial of bottled water was unexhausted and summary judgment should be granted in defendant Gardon's favor. *Id*. This finding was not disturbed by Judge Cohn. Dr. Pandya does not raise failure to exhaust in his motion to dismiss or for summary judgment, however, the Court may address this issue *sua sponte*.[3]

[3] In *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910, 921 (2007), while the Supreme Court held that failure to exhaust is an affirmative defense, the Court also pointed out that prisoner complaints may still be subject to *sua sponte* dismissal for failure to exhaust administrative remedies. *Deruyscher v. Michigan Dep't of Corrections Health Care*, 2007 WL 1452929, *2 (E.D. Mich. 2007), citing, *Jones*, 127 S.Ct. at 920-21. *See also Ghosh v. McClure*, 2007 WL 400648, at *6 n. 3 (S.D. Tex. 2007) ("Nothing in the Supreme Court's decision in *Jones* precludes a reviewing court from raising the issue of exhaustion *sua sponte* or dismissing the complaint without service on the defendants where the pleadings and the record confirm that a prisoner has violated 42 U.S.C. § 1997e(a) by failing to exhaust his remedies before filing suit."); *Spaulding v. Oakland Co. Jail Medical Staff*, 2007 WL 2336216, *3 (E.D. Mich. 2007) (Where it is clear from the face of the complaint that a plaintiff failed to properly exhaust his administrative remedies in accordance with the applicable grievance policy, the plaintiff's complaint is subject to *sua sponte* dismissal for failure to state a claim pursuant to *Jones v. Bock*.); *Leary v. A.R. U.S. Conerly*, 2007 WL 1218952 (E.D. Mich. 2007) (lack of exhaustion was obvious from the face of a pleading and requiring the defendant to file a motion to dismiss for failure to exhaust would be a waste of defendants' and the court's time and resources.). Thus, it is appropriate for this Court to undertake

In his objection to the January 14, 2010 Report and Recommendation, plaintiff stated that he did, in fact, exhaust his administrative remedies regarding the denial of bottled water. (Dkt. 109). Plaintiff pointed to Grievance JCF 070103225012E in support of his argument. (Dkt. 109, App. A). This grievance was not part of the record considered when the January 14, 2010 Report and Recommendation was issued. More importantly, nothing in the Step I grievance suggests anything about the denial of bottled water or Dr. Pandya. In Step I, plaintiff wrote:

> Ms. Beth Gardon has continued to deny/refuse prescribed medicine, medical treatment and equipment, stated... "If, I give it to him I'll have to give it to everyone else." Therby [sic] subjecting grievant to substandard cost cutting saving care. Wherfore [sic] sentencing grievant to a[n] unauthorized and illegal 'Death Sentence'! Ms. Beth Gardon actions and continued lack thereof amount to "Deliberate Indifference!

(Dkt. 109, App. A, p. 19). Plaintiff's grievance was rejected as duplicative. *Id*. at 20. Plaintiff filed a Step II appeal, which makes no mention of bottled water. *Id*. at 21. Plaintiff filed a Step III appeal, in which the denial of bottled water is finally mentioned. *Id*. at 23.

Plaintiff cannot raise a new issue in a grievance appeal and have it be deemed exhausted, unless the MDOC proceeded to address that new claim on the

---

a review of the record to determine if plaintiff complied with the PLRA's exhaustion requirement before filing suit.

merits. *Cain-El v. Burt*, 2003 WL 21648721, *7 (E.D. Mich. 2003) ("Fair notice" of the issue being grieved was deemed not given where new issue was first raised in Step III appeal.); *Gora v. Gelabert*, 2009 WL 3233849, *7 (W.D. Mich. 2009) (Where new issue raised in Step II grievance appeal was addressed on the merits in the Step III response, new claim was deemed exhausted.). Moreover, under *Woodford*, plaintiff cannot have exhausted any claims pursuant to this grievance because it was rejected based on his failure to follow the grievance policy by filing a duplicative grievance. *See e.g.*, *Surles v. Andison*, 2009 WL 1607621, *7 (E.D. Mich. 2009). There is no evidence in the record that the issue of bottled water was addressed on the merits in any grievance. Thus, this issue, as to Dr. Pandya, like defendant Gardon, is unexhausted and summary judgment should be granted in Dr. Pandya's favor.

C. Deliberate Indifference

Plaintiff contends that defendant Salisbury removed medication from his cell on October 14, 2006 and threw the medication in the trash in retaliation for plaintiff helping inmate Joshua McClure write a grievance. (Dkt. 1). This implicates both an Eighth Amendment deliberate indifference claim and a First Amendment retaliation claim. Defendant acknowledged that claims that a prisoner has been denied prescribed medication may constitute a violation of his federal rights, but argues that this is not the case here, because plaintiff was not denied his

prescription medication. While plaintiff's medication was confiscated, according to defendant, the medication was replaced on the same day, after plaintiff notified Health Care staff of the seizure. (Dkt. 38, Exs. G, H). Thus, defendant argues, plaintiff was not deprived of his medications. According to plaintiff, he did not receive all of his medications that same day.

In the context of failure to provide prescription medications, some cases hold that where a prisoner offers no evidence showing any adverse consequences from the delays in the receipt of his medications, a deliberate indifference claim fails. *Gillard v. Kuykendall*, 295 Fed.Appx (8th Cir. 2008), citing, *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005) (objective seriousness of delay in treatment must be measured by reference to effect of delay, which must be shown by verifying medical evidence). Similarly, other courts have held that where the delay in receipt of prescription medications is insignificant (no longer than seven days) and the prisoner suffered no lasting physical harm from the delay, a deliberate indifference claim fails. *Williams v. Arnold*, 207 Fed.Appx. 980, 985 (11th Cir. 2006). A serious medical need generally falls into one of two categories (1) a medical need diagnosed by a physician as requiring treatment; or (2) a medical need that is so obvious that a lay person would easily recognize the necessity for a doctor's attention. *Monmouth County Correctional Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir.), *cert. denied*, 486 U.S. 1006 (1988). As to

the latter category, "an inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Dodson*, at *4, quoting, *Napier*, 238 F.3d at 742. As the Sixth Circuit explained in *Blackmore v. Kalamazoo Co.*, 390 F.3d 890, 898 (6th Cir. 2004):

> *Napier* applies where the plaintiff's "deliberate indifference" claim is based on the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious. In such circumstances, medical proof is necessary to assess whether the delay caused a serious medical injury.

According to plaintiff, defendant Salisbury wrongfully threw away his medication. However, plaintiff offers no verifying medical evidence that a delay in the receipt of replacement medications (if any existed) caused him a serious medical injury. Thus, plaintiff has failed to establish a genuine issue of material fact with respect to his Eighth Amendment claim against defendant Salisbury and the undersigned suggests that summary judgment should be granted in his favor.

D. First Amendment Retaliation

Plaintiff contends that defendant Salisbury removed medication from his cell on October 14, 2006 and threw the medication in the trash in retaliation for plaintiff helping inmate Joshua McClure write a grievance. (Dkt. 1). Defendant

Salisbury asserts that plaintiff has no First Amendment right to assist another prisoner with filing a grievance.

In this circuit, an inmate does not have an independent right to help other prisoners with their legal claims. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999), citing, *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Rather, a "'jailhouse lawyer's' right to assist another prisoner is wholly derivative of that prisoner's right of access to the courts; prison officials may prohibit or limit jailhouse lawyering unless doing so interferes with an inmate's ability to present his grievances to a court." *Id*. Thus, only if an inmate's assistance is necessary to vindicate another inmate's right of access to the courts, can the assisting inmate state a claim of retaliation. *Id*.

In response to defendant's motion, plaintiff essentially argues that defendant has failed to disprove that plaintiff did not meet the criteria for the legal writer program or that the grievance did not involve a constitutional right. Plaintiff misapprehends the burden of proof applicable to his claim. To establish a First Amendment retaliation claim, *the plaintiff* must prove that: (1) the plaintiff engaged in activities protected by the Constitution or statute; (2) the defendant took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) that this adverse action was taken at least in part because of the exercise of the protected conduct. *Id*. Conclusory

allegations are insufficient to show that a defendant was motivated by the exercise of a plaintiff's First Amendment rights. *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996). Bare allegations by the plaintiff of malice on the part of a defendant are not enough to establish retaliation claims. *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998). In response to defendant's motion for summary judgment, plaintiff did not come forward with any admissible evidence whatsoever to support his retaliation claim. "As an example [of the type of evidence necessary], the assisting inmate in Thaddeus-X was found to have engaged in protected conduct because the complainant had no knowledge of the law, was being held in administrative segregation, and could only access legal books by requesting them by title." *Herron v. Harrison*, 203 F.3d 410, 416 (6th Cir. 2000). No such evidence has been presented. Thus, the undersigned suggests that defendant Salisbury's motion for summary judgment on plaintiff's First Amendment retaliation claim should be granted.

E. Eleventh Amendment Immunity

Plaintiff alleges in his complaint that the suit is against defendants in their official and personal capacities. A suit against a public official in their "official capacity" is a suit against the public entity that employs the public official. *Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008), citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). In this case, defendants are employed by the State

of Michigan so a suit against them in their official capacity is a suit against the State of Michigan. "The Eleventh Amendment bars suits brought in federal court against a state and its agencies unless the state has waived its sovereign immunity or consented to be sued in federal court." *Id*. The record does not indicate that the State of Michigan has waived its immunity or otherwise consented to being sued and, therefore, the claim cannot be maintained against defendants in their official capacity. However, the Eleventh Amendment does not bar suit against defendants in their individual capacity under 42 U.S.C. § 1983.

F. Qualified Immunity

Defendants claim to be entitled to qualified immunity regarding their actions in this case. The doctrine of qualified immunity means that "'[g]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Caldwell v. Moore,* 968 F.2d 595, 599 (6th Cir. 1992), quoting, *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Defendants bear the burden of pleading qualified immunity, but plaintiff bears the burden of showing defendants are not entitled to qualified immunity. *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002).

The Supreme Court had established a two-part test in order to determine whether qualified immunity was applicable to a particular situation. *Saucier v. Katz*, 533 U.S. 194 (2001). The first part of the test involved a determination of whether the facts of the case, viewed in the light most favorable to the plaintiff, "show the officer's conduct violated a constitutional right." *Id*. at 201. If the first question was resolved in the affirmative then the court would decide "whether the right was clearly established." *Id*. If both questions are resolved in the affirmative, then the doctrine of qualified immunity does not apply and the case can proceed.

Recently, the Supreme Court revisited their decision in *Saucier* and concluded that mandatory order of the two part test for determining if qualified immunity applied was no longer sound based on several factors including judicial economy. *Pearson v. Callahan*, — U.S. —, 129 S.Ct. 808 (2009). While not modifying the factors that should be considered in such a decision, the Court held that sometimes it makes sense to allow the second part of the test to be decided first and that such a decision may resolve the controversy without having to address the first part of the test. In *Pearson*, the § 1983 claim of the plaintiff was based on an allegedly unlawful search conducted by the defendant police officers. Without having to engage in the perhaps more complicated decision of determining whether plaintiff's constitutional rights had been violated, the Court found that the constitutional right claimed by plaintiff was not clearly established where lower

court case law was consistent with the conduct of the officers and "principles of qualified immunity [should] shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." Given the foregoing recommendations regarding the claims against the moving defendants, the issue of qualified immunity need not be further addressed.

## IV. RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDS** that the defendants' motions for summary judgment be **GRANTED**. Defendants Salisbury and Pandya (along with unserved defendant Steele, *see* note 1, *supra*) are the last remaining defendants in this case. Given the foregoing recommendations that summary judgment should be granted in favor of defendants Salisbury and Pandya, and that defendant Steele should be dismissed for lack of service, the undersigned suggests that plaintiff's complaint be **DISMISSED** in its entirety.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and

Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Administrative Order 09-AO-042. The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: July 1, 2010

s/Michael Hluchaniuk
Michael Hluchaniuk
United States Magistrate Judge

**CERTIFICATE OF SERVICE**

I certify that on July 1, 2010, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send electronic notification to the following: Julia R. Bell, Brian J. Richtarcik, and Randall A. Juip , and I certify that I have mailed by United States Postal Service the paper to the following non-ECF participant(s): Maurice Newson, # 370171, G. ROBERT COTTON CORRECTIONAL FACILITY, 3500 N. Elm Road, Jackson, MI 49201.

s/Tammy Hallwood
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov